UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

IN Re: Stephen Orsmby Gallagher II
Debtor

BAP Number: 8:23-cv-031350DLB

Bankruptcy Case Number: 22-14180
Chapter: 7

Appellant
Stephen Ormsby Gallagher II

v.

Appellee
Merrill Cohen
Chapter 7 Trustee for the District of MD

**************************************************************************

EMERGENCY MOTION OF APPELLANT FOR STAY PENDING APPEAL

## TABLE OF CONTENTS

**Table of Authorities**      **3**

**Introduction**      **4**

**Background**      **4**

**Bankruptcy Court's Ruling on Motion for Stay Pending Appeal**      **9**

**Argument**      **9**

    I.     **The Griggs Principle**      **9**

    II.     **Mr. Gallagher will suffer imminent irreparable injury if the stay is denied.**      **12**

    III.     **Other parties to the lawsuit will not be substantially harmed by the stay.**      **14**

    IV.     **Mr. Gallagher is likely to prevail on the merits of the appeal.**      **15**

    V.     **The public interest will be served by granting the stay.**      **20**

**Conclusion**      **21**

**Request for Relief**      **21**

**Certificate Of Service**      **23**

**Proposed Order**      **24**

**Addendum 1**      **26**

**Addendum 2**      **41**

**Addendum 3**      **42**

TABLE OF AUTHORITIES

## CASES

Belk v. Charlotte-Mecklenberg Bd. of Educ., 1999 U.S. App. LEXIS 34574, *4 (4th Cir. Dec. 30, 1999)..................................................................................................12

Blackwelder Furn. Co., Etc. v. Seilig Mfg. Co., 550 F.2d 189, 197 (4th Cir. 1977)..........21

Coinbase, Inc. v. Bielski, 599 U.S. ___ (2023)............................................................11,12

Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982)....................................9

In re Justice, Civil No. 07-5231 (W.D. Ark. Sep. 22, 2008)...............................................16

Marrese v. Orthopedic Surgeons, 470 U.S. 373 (1985).........................................................9

O'Brien v. Appomattox Cnty., 2002 U.S. Dist. LEXIS 22554, at *4-5 (W.D. Va. Nov. 15, 2002)..............................................................................................................20

Ransom v. FIA Card Services, N. A., 562 U.S. 61 (2011)......................................11,16,17

Schultz v. U.S., 529 F.3d 343, 347 (6th Cir. 2008)............................................................17

University of Texas v. Camenisch, 451 U.S. 390 (1981).....................................19

## STATUTES

11 U.S. Code § 348(a)......................................................................................................11

11 U.S.C. §707(b).......................................................................................6,7,8,11,15,20

Fed. R. Civ. P. Rule 8…………………………………………………………………………...8

## OTHER

Bankruptcy Basics: A Primer - Congressional Research Service - 2022 - located online at https://crsreports.congress.gov/product/pdf/R/R45137 …………………………………17

Chapter 7 Basics - US Court Website -

https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-7-bankru

ptcy-basics ……………………………………………………………………………….18


Department of Justice : Justice Manual: Civil Resource Manual -

https://www.justice.gov/jm/civil-resource-manual-191-termination-bankruptcy-jurisdictio

n …………………………………………………………………………………………..9


Official Court Transcript of Hearing on 11/01/2023……………………………………….15


Tsai, Alexander C. "Home foreclosure, health, and mental health: a systematic review of

individual, aggregate, and contextual associations." PloS one vol. 10,4 e0123182. 7 Apr.

2015, doi:10.1371/journal.pone.0123182………………………………………………13


## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 8(a)(2), Appellant Stephen Ormsby Gallagher II ("Debtor") moves for a stay of the bankruptcy court's order denying dismissal issued 11/07/2023 pending appeal. Because of the time-sensitive nature of this request, the debtor respectfully asks the Court to rule within the next three business days, on or before Friday, January 19, 2024.

## BACKGROUND

The following facts of this case are not in dispute by any parties:

1) This case was brought as a Chapter 7 in August 2022 when Mr. Gallagher

   had been unemployed for an extended period and had virtually no savings

remaining to his name. (Voluntary Petition [Chapter 7] - Docket # 1 - 08/01/2022)

2) In November of 2022, Mr. Gallagher accepted an offer of employment for $110,000 annually from IES Communication, making him eligible to proceed with a Chapter 13 repayment plan. Mr. Gallagher moved to convert, and the court granted said conversion that same month. (Motion to Convert Case to Chapter 13 - Docket #70 - 11/09/2022)

3) Mr. Gallagher made regular payments to both his proposed repayment plan and mortgage, and worked with the Chapter 13 trustee to resolve any issues with its construction, up until the point Mr. Gallagher lost his job through no fault of his own in June of 2023.

4) Mr. Gallagher accepted a new offer of employment with Faith Group LLC on July 24rd of 2023 for $137,500 annually.

5) Mr. Gallagher notified the Chapter 13 trustee of his new job, and was told he would need to make back payments and furnish a new pair of paystubs to be able to continue in Chapter 13.

6) On 25th of August, 2023, the court ordered the conversion of Mr. Gallagher's case from Chapter 13 to Chapter 7, due to failure to file an updated Chapter 13 plan, despite his prior 6 months of income being well in excess of the state median and a violation of the Chapter 7 means test. (Order Converting Case from Chapter 12/13 to Chapter 7 - Docket # 121 - 08/25/2023)

7) On 13th of September, 2023, Mr. Gallagher informed Mr. Cohen via email that he did not pass the means test due to his income. On 19th of September, Mr. Gallagher furnished paystubs and amended Chapter 7 income forms to Mr. Cohen verifying this. Mr. Cohen stated that this was irrelevant to proceeding in Chapter 7. (Response to Chapter 7 Trustee's Opposition and Motion to Strike Exhibit A - Docket # 133 - 10/27/2023)

8) On 28th of September, 2023, Mr. Gallagher filed bankruptcy forms for Chapter 7 Statement of Monthly Income and Means Test Calculation 122A-1 and 122A-2. These forms show that due to Mr. Gallagher's income there is a presumption of abuse. The threshold for presumption of abuse of disposable income after 60 months per line 40 of Form 122A-2 is set at $15,150, a direct reference to the abuse threshold calculation outlined in 11 U.S. Code § 707(b)(2)(i). Mr. Gallagher's calculated disposable income after 60 months is $151,578.60. (Chapter 7 Statements - Monthly Income [122A-1] / Exemption Presumption of Abuse [122A-1Supp] and Chapter 7 Means Test Calculation - Docket #127 - 09/28/2023)

9) On 28th of September, 2023, Mr. Gallagher filed a Motion to Dismissal pursuant to 707(b). (Motion to Dismiss Case - Docket # 128 - 09/28/2023)

10) On 3rd October, 2023 Mark A. Neal, Clerk of Court, filed a notice of the presumption of abuse under 707(b) arising. (Clerk's Notice of Abuse Docket # 127 - 10/03/2023)

11) On 7th October, 2023 Mr. Cohen filed his Trustee's Opposition To Debtor's Motion To Dismiss Case. (Opposition - Docket # 130 - 10/07/2023)

12) On 27th October, 2023 Mr. Gallagher filed his Response To Trustee's Opposition and Motion to Strike, due to Mr. Cohen's Opposition Motion lacking particularity, any references to authorities, and a lack of statutory standing for a Trustee to oppose a dismissal for abuse. (Response - Docket #133 - 10/27/2023)

13) On 1st November, 2023 the bankruptcy court held a hearing on the Motion to Dismiss, and afterward the court issued the following statement: "The Court concluded that it has discretion whether to dismiss the case, dismissal is not appropriate because the Debtor has enjoyed the benefits of the automatic stay for 15 months, the Trustee has been administering the case, and creditors would be prejudiced by dismissal." (Hearing Held (Bk) - Docket #135 - 11/02/2023).

14) On 7th November, 2023, the bankruptcy court posted a denial of an Order for Dismissal based on 707(a), which is not the basis of Mr. Gallagher's Motion for Dismissal, and not the Proposed Order that Mr. Gallagher had included with his Motion to Dismiss for 707(b). (Order on Motion to Dismiss Case - Docket #136 - 11/07/2023)

15) On 22nd December, 2023, Mr. Gallagher filed an "Emergency Motion of Appellant for Stay Pending Appeal" with the bankruptcy court. (Motion To Stay Pending Appeal - Docket #154 - 11/07/2023 - Addendum #1)

16) On 28th December, 2023, the bankruptcy court denied said motion. (Order on Motion To Stay Pending Appeal - Docket #155 - 11/07/2023 - Addendum #2)

17) On 3rd January, 2024 the Chapter 7 trustee filed his "MOTION FOR AUTHORITY TO SELL CERTAIN PROPERTY OF THE ESTATE". (Motion to Sell and Notice of Motion - Docket #159 - 01/03/2024 - Addendum #3)

The main issue under appeal in this case surrounds whether or not Congress granted the bankruptcy court the statutory authority to rebut the presumption of abuse raised by 11 U.S. Code § 707(b) and deny a motion to dismiss for abuse by considering factors outside the "means test" disposable income formula, namely the impact to secured and unsecured creditors, the theoretical value of the debtor's assets, and the length of time the bankruptcy case has been ongoing. The bankruptcy court ruled on 11/01/2023 that the presumption of abuse falls entirely within the discretion of the Court to determine, and denied Mr. Gallagher's Motion to Dismiss Pursuant to 707(b), despite Mr. Gallagher having an order of magnitude more disposable income than the means test allows for, and earnings nearly double the median income of his region. Mr. Gallagher argues the contrary, citing the Supreme Court, the Sixth and Eighth Federal Circuit Courts, the District Court of the Western District of Arkansas, the lawmakers who authored the statute, and the plain language of the statute itself. The Chapter 7 Trustee intends to proceed as rapidly as possible with a liquidation that is unlawful by statute,

therefore Mr. Gallagher moves to stay the Court's order denying dismissal on 11/07/2023 and any further proceedings pending the District Court's judgment upon appeal.

### BANKRUPTCY COURT'S RULING ON MOTION FOR STAY PENDING APPEAL

Per Fed. R. Civ. P. Rule 8(1)(a), Mr. Gallagher filed an Emergency Motion for Stay Pending Appeal on the 22nd of December, 2023. The bankruptcy court denied the motion on December 27, 2023, stating the following:

*"For the reasons stated on the record at the November 1, 2023 hearing on the Debtor's motion to dismiss, the Debtor is not likely to succeed on the merits. Moreover, the public interest would not be well served with a stay because a debtor should not be able to enjoy the benefits of the automatic stay for 17 months and then dismiss his case when the Court-appointed trustee is on the eve of selling an asset for the benefit of creditors. Because the Debtor has not satisfied the standard for a stay pending appeal, the motion is denied."*

### ARGUMENT

### I.   The Griggs Principle

It is well established, through multiple Supreme Court rulings, that the appeals process removes jurisdictional control over all matters under appeal from the court that issued the judgment onto the court appealing it.

"The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982)

"In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." Marrese v. Orthopedic Surgeons, 470 U.S. 373 (1985)

The Department of Justice confirms that the Griggs principle applies equally to bankruptcy cases as any other, as noted in its Civil Resource Manual - Title 191: Termination of Bankruptcy Jurisdiction, on its official federal website (Department of Justice : Justice Manual: Civil Resource Manual - found online at https://www.justice.gov/jm/civil-resource-manual-191-termination-bankruptcy-jurisdictio n ). The DOJ adds additional commentary that "Filing of a notice of appeal deprives the bankruptcy court of jurisdiction to enter orders that would affect or modify any issue or matter on appeal. Bialac v. Harsh Inv. Co. (In re Bialac), 694 F.2d 625 (9th Cir. 1982); Hyman v. Iowa State Bank (In re Health Care Prods.), 169 B.R. 753, 755 (M.D. Fla. 1994)" (Id.)

In a recent 2023 decision, the Supreme Court ruled that an appeal of a District Court ruling denying a motion to compel arbitration necessarily required a stay of the lower court proceedings while the appeal was ongoing, as the aspects under appeal amounted to whether or not the case should be allowed to continue, at all.

*"Because the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.' 459 U. S., at 58. As Judge Easterbrook cogently explained, when a party appeals the denial of a motion to compel arbitration, whether 'the litigation may go forward in the district court is precisely what the court of appeals must decide.' Bradford-Scott Data Corp. v. Physician Computer Network, Inc., 128 F.3d 504, 506 (CA7 1997). Stated otherwise, the question of whether 'the case should be litigated in the district court . . . is the mirror image of the question presented on appeal.' Id., at 505. Here, as elsewhere, it 'makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one.' Apostol v. Gallion, 870 F.2d 1335, 1338 (CA7 1989). In short,*

*Griggs dictates that the district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing."* (Coinbase, Inc. v. Bielski, 599 U.S. ___ [2023], at 3-4).

> *"As Judge Easterbrook stated, continuation of proceedings in the district court 'largely defeats the point of the appeal.' Bradford-Scott, 128 F. 3d, at 505. A right to interlocutory appeal of the arbitrability issue without an automatic stay of the district court proceedings is therefore like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible."* (Id., at 6).

*"At least absent contrary indications, the background Griggs principle already requires an automatic stay of district court proceedings that relate to any aspect of the case involved in the appeal. By contrast, when Congress wants to authorize an interlocutory appeal, but not to automatically stay district court proceedings pending that appeal, Congress typically says so."* (Id., at 7).

Although the specific details and mechanisms of this case are different, the principle is the same. The primary question under appeal in this instance is whether or not the Chapter 7 Means Test instituted in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter, BAPCPA), is a mandatory, "brighter line test" (Ransom v. FIA Card Services, N. A., 562 U.S. 61 [2011], at 16) for eligibility and strictly a "screening mechanism"(Id., 2) to bar high income individuals from access to Chapter 7 relief, as defined by Supreme Court majority opinion. If this Court finds in favor of such an interpretation, then the case would need to be remanded back to the bankruptcy court, which would be required by statute to presume abuse and either dismiss the case or convert to Chapter 13 with the consent of the debtor. In either instance, the chapter 7 estate and case would cease to exist as an entity (11 U.S. Code § 348[a]). Therefore, here, as in Coinbase, Inc. v. Bielski, "the entire case is essentially 'involved in the appeal' ,"

(Id, at 4) meaning that it " 'makes no sense for [Chapter 7 bankruptcy] to go forward while the court of appeals cogitates on whether there should be one', " (Id, at 4). Per Supreme Court dicta, then, "the background Griggs principle already requires an automatic stay of [bankruptcy] court proceedings that relate to any aspect of the case involved in the appeal." (Id, at 7)

On 3rd January, 2023, the Trustee filed TRUSTEE'S MOTION FOR AUTHORITY TO SELL CERTAIN PROPERTY OF THE ESTATE, moving to liquidate assets of the Chapter 7 Estate, namely Mr. Gallagher's primary residence. In his proposed order granting relief for said motion, he laid out the jurisdictional authority of the court to act on it: "A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and this matter in this district is proper under 28 U.S.C. §§ 1408 and 1409." The matter under appeal is whether or not the case should have been dismissed pursuant to 707(b) at the hearing on 11/01/2023. Per the Supreme Court ruling in Griggs, the existence of the Chapter 7 estate and all matters related to it now fall under the jurisdiction of the District Court pending appeal. For these reasons, and those cited above, this Court should rule to allow a stay of proceedings pending appeal.

**II.     Mr. Gallagher will suffer imminent irreparable injury if the stay is denied.**

If this honorable court does not find cause to grant a stay per the Griggs Principle, it should instead consider that Mr. Gallagher meets the four part standard for stays pending appeal or preliminary injunctions, as well.

The settled standard which allows for the Court to issue a stay pending appeal is conditioned upon the ability of the movant following :"(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." Belk v. Charlotte-Mecklenberg Bd. of Educ., 1999 U.S. App. LEXIS 34574, *4 (4th Cir. Dec. 30, 1999) (quoting Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970)); FED. R. APP. P. 8(a)(2).

The property of the estate that is the subject of liquidation in this case is Mr. Gallagher's primary residence. This is his home, the center of his community, and his main place of business as a remote worker managing Federal IT and construction projects. The impact of losing one's home goes far beyond mere monetary considerations, as this quote from an aggregate review of multiple studies observing the mental and physical health effects of hosted on the NIH's Federal website details:

"*In all studies that examined an outcome related to mental health or health behavior (including substance use) (25/25 [100%]), foreclosure was associated with worsened outcomes. Among all 21 studies based on individual-level data, the personal experience of home foreclosure was associated with worsened outcomes including depression, anxiety, alcohol use, psychological distress, and suicide. Notably, only two of these studies accounted for potential selection into foreclosure by adjusting for baseline (pre-foreclosure) comorbidity. The estimated associations in the 4 studies based on aggregate-level data mirrored those of the individual-level studies, except that the outcomes studied were (for example) state-level suicide rates instead of personal suicide risk. Finally, similar themes of stress, anxiety, depression, and shame were almost universally described by study participants in the six qualitative studies.*

*Among the health-related studies, most (10/12 [83%]) showed that foreclosure was associated with worsened outcomes. Among the 10 studies based on individual-level data, in eight studies (8/10 [80%]) the personal experience of foreclosure was associated with worsened health outcomes."* (Tsai, Alexander C. "Home foreclosure, health, and mental health: a systematic review of individual, aggregate, and contextual associations." PloS one vol. 10,4 e0123182. 7 Apr. 2015, doi:10.1371/journal.pone.0123182)

The mental and physical impacts of displacement from his domicile are both imminent and severe, and cannot be remedied with mere monetary compensation. Likewise the displacement from his main place of work could result in disruptive downstream effects that are difficult to quantify.

Honorable Judge Chavez-Ruark offered no ruling against the claim that losing his home, community, and place of business would constitute irreparable harm to Mr. Gallagher. Presumably, the bankruptcy court agrees with Mr. Gallagher on this point, as he hopes this honorable court will, as well.

### III.     Other parties to the lawsuit will not be substantially harmed by the stay.

A stay of proceedings pending the outcome of appeal to the District Court would have little to no impact on the other parties, in this case creditors, in Mr. Gallagher's bankruptcy, whatsoever, outside of a minor delay in payment. On the hearing 11/01/2023, all parties and the Court agreed on the facts of the case, specifically that there was more than sufficient value in Mr. Gallagher's assets to pay any creditors. All the creditors are

major institutions with ample reserves, the economy is flourishing, and the stock market just hit new all time highs this past month. It is impossible to foresee any substantial harm coming to Mr. Gallagher's creditors by pausing to allow the appeals process to take its course, whereas Mr. Gallagher could face substantial impacts as outlined above by a lack of one. Therefore, the balance of equities favors the granting of a stay.

Honorable Judge Chavez-Ruark offered no ruling against the claim that the other parties to the bankruptcy proceeding stand to suffer no substantial harm from a stay. Presumably, the bankruptcy court agrees with Mr. Gallagher on this point, as he hopes this honorable court will, as well.

## IV.    Mr. Gallagher is likely to prevail on the merits of the appeal.

On December 27th, 2023 ,honorable Judge Maria Ellena Chavez-Ruark ruled against Mr. Gallagher's Emergency Motion for Stay Pending Appeal stating: "For the reasons stated on the record at the November 1, 2023 hearing on the Debtor's motion to dismiss, the Debtor is not likely to succeed on the merits."

In his Emergency Motion for Stay Pending Appeal, affixed to this motion as Appendix A, Mr. Gallagher laid out the following reasons he would likely succeed on the merits of the appeal:

1) The judge issued a ruling at the November 1st 2023 hearing that misstated the language of 707(b), and was contrary to the plain language of the statute. Judge Chavez-Ruark ruled that "*Section 707(b) talks about a presumption. It doesn't say that, after you punch the numbers, that if the test has a certain result, that dismissal is the outcome. 707(b) talks about a presumption and the Court has to decide whether there has*

*been an abuse."* Official Court Transcript of Hearing on 11/01/2023 at 11).

Additionally, the judge ruled:

*"Well, Mr. Gallagher, the Court has presumed abuse and the Court has concluded that that presumption has been rebutted. Let's be clear."* (Id. at 14)

Whereas, the statute directs that , upon failing the means test, *"the court shall presume abuse exists"* 11 U.S. Code § 707(b)(2)(A)(i). Meaning the court must presume an abuse of the statute, not investigate further into whether or not there is one. The statute follows: *"(i)In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.*
*(ii)In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—"* 11 U.S. Code § 707(b)(2)(B). Meaning only the debtor can present special circumstances to rebut the presumption of abuse. The court is not free to do so of its own volition.

2) The lawmakers in Congress who wrote the statute made clear on multiple occasions that the means test was meant to solely be a income based threshold test that removed judicial discretion.

3) In Justice v. Advanced Control Solutions, Inc., No. 07-5231, 2008 WL 4368668 (W.D. Ark.Sept. 22, 2008), the District Court overturned the decision of a bankruptcy court that ruled, in nearly identical circumstances to the ones in the case, that the means test, which the debtor failed to satisfy, could be disregarded if proceeding in Chapter 7 stood to benefit the creditors. The District Court ruled

that the means test was mandatory and abuse could not be ignored by the court, and therefore the case would need to be dismissed or converted with consent of the debtor. The Sixth Circuit affirmed that decision.

4) Justice Kagan in her 2011 majority Supreme Court opinion in Ransom v. FIA Card Services, N. A., 562 U.S. 61 (2011) defined the means test as a "screening mechanism"(Id., 2)  and "brighter line test"(Id., 16) that "supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations". (Id. 3) Kagan makes the argument that the means test exists as an explicit bar on eligibility of higher income individuals to be able to access the relief afforded by a liquidation in Chapter 7 proceeding rather than a repayment plan, and that "Congress chose to tolerate the occasional peculiarity" as a result of its strict, mathematical formula for exclusion of a certain class of debtor.

5) In Schultz v. U.S., 529 F.3d 343, 347 (6th Cir. 2008), the Sixth Circuit ruled that "*The centerpiece of [BAPCPA] is the imposition of a 'means test' for Chapter 7 filers, requires would-be debtors to demonstrate financial eligibility to avoid the presumption that their bankruptcy filing is an abuse of the bankruptcy proceedings"* and result in having their cases dismissed or converted.

6) The websites of both Congress and the federal US Court system define the means test as a strict eligibility requirement that potential debtors must conform to in order to proceed in a Chapter 7 case. The Congressional Research Service, in a report hosted on Congress's official federal website, Congress.gov, describes the eligibility threshold for Chapter 7 thusly:

*"Chapter 7 potentially 'allows an individual who is overwhelmed by debt to obtain a 'fresh start' in the form of a discharge of most types of debt by surrendering for distribution his or her nonexempt property.' However, the Bankruptcy Code—starting in 2005 with the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)—limits an individual debtor's ability to obtain Chapter 7 relief by imposing a 'means test' to determine whether 'an individual debtor . . . whose debts are primarily consumer debts' qualifies for Chapter 7 relief. If the debtor's current monthly income, reduced by certain allowable expenses, exceeds statutory thresholds established by the Bankruptcy Code, then the bankruptcy court must either dismiss the Chapter 7 case or convert the case to a debt adjustment proceeding under Chapter 13."* (Bankruptcy Basics: A Primer - Congressional Research Service - 2022 - located online at https://crsreports.congress.gov/product/pdf/R/R45137, at 11-12)

The US Courts official federal website describes a Chapter 7 proceeding as entirely premised upon the ability of a debtor to pass the means test, else such relief is not available: *"To qualify for relief under chapter 7 of the Bankruptcy Code, the debtor may be an individual, a partnership, or a corporation or other business entity. 11 U.S.C. §§ 101(41), 109(b). Subject to the means test described above for individual debtors, relief is available under chapter 7 irrespective of the amount of the debtor's debts or whether the debtor is solvent or insolvent."* (Chapter 7 Basics - US Court Website - located online at https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-7-bankruptcy-basics)

Presumably, the bankruptcy court did not find the plain language of the statute, the stated intentions of the lawmakers, multiple District and Circuit Court rulings,

Supreme Court rulings, and official Federal Court and Congressional guidance on Chapter 7 eligibility to be compelling to sufficiently present a counter argument to the rulings laid out in the hearing on November 1st.

The Supreme Court has ruled, in *University of Texas v. Camenisch*, 451 U.S. 390 (1981) that it is erroneous when a court "improperly equates 'likelihood of success' with 'success,'" and attempts to proactively rule on the merits of a case in a ruling on a preliminary injunction:

*"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, Progress Development Corp. v. Mitchell, 286 F.2d 222 (CA7 1961), and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits, Industrial Bank of Washington v. Tobriner, 132 U.S.App.D.C. 51, 54, 405 F.2d 1321, 1324 (1968); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (CA2 1953). In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits. E. g., Brown v. Chote, supra; Gellman v. Maryland, 538 F.2d 603 (CA4 1976); Santiago v. Corporacion de Renovacion Urbana y Vivienda de Puerto Rico, 453 F.2d 794 (CA1 1972)."* (Id., at 395)

Obviously, Honorable Judge Chavez-Ruark believes herself to be right on the merits in her ruling over Mr. Gallagher on November 1st, 2023. But the standard for granting a stay pending appeal merely requires a demonstration of the likelihood of

success, not certainty of a win on the merits. The language of the statute, the intent of the lawmakers, District, Circuit, and Supreme Court rulings, and the guidance of the Congress and Federal Court presented should be more than sufficient to meet the threshold for likelihood to prevail on the merits, and Mr. Gallagher hopes this honorable court would agree.

V.    **The public interest will be served by granting the stay.**

On December 27th, 2023 ,honorable Judge Maria Ellena Chavez-Ruark ruled against Mr. Gallagher's Emergency Motion for Stay Pending Appeal stating: "Moreover, the public interest would not be well served with a stay because a debtor should not be able to enjoy the benefits of the automatic stay for 17 months and then dismiss his case when the Court-appointed trustee is on the eve of selling an asset for the benefit of creditors." Mr. Gallagher's bankruptcy case has not gone on an unusually long amount of time for one that has been through conversion to Chapter 13. Moreover, the statue places no timeframe on the automatic stay. It is difficult to fathom how the public is put at risk by allowing Mr. Gallagher to "enjoy the benefits" of the stay explicitly called for by statute for an unremarkable amount of time in the context of bankruptcy proceedings generally, or while the District Court considers his appeal. Court cases ruling on such circumstances in one way or the other were unable to be found with some searching.

However, it is well established in this Circuit that, as a general matter, "[t]he public interest is best served by preserving the status quo ante litem until the merits are considered." O'Brien v. Appomattox Cnty., 2002 U.S. Dist. LEXIS 22554, at *4-5 (W.D. Va. Nov. 15, 2002) (citing Maryland Undercoating Co. v. Payne, 603 F.2d 477 (4th Cir. 1979)).

In this case, preserving the status quo ante means preserving the state of things prior to the issue on appeal, namely the presumption of abuse being triggered and pending Hearing for Dismissal per 707(b).

Additionally, the Fourth Circuit has ruled that the presence of clearly defined federal law weighing in favor of the movant is a considerable factor on the issue of public interest: *"The presence of a federal statute both prohibiting the alleged acts of the defendant and supplying the gravamen of the complaint aligns Blackwelder, if only provisionally, on the side of the public interest and constitutes added weight in favor of precautionary relief."* Blackwelder Furn. Co., Etc. v. Seilig Mfg. Co., 550 F.2d 189, 197 (4th Cir. 1977) Given, as has been shown in the above motion, that Mr. Gallagher has failed the eligibility threshold of the 707(b) means test, and therefore is ineligible to proceed in a Chapter 7 case by statute, *"it is clear that the public interest lies, as we have already said, in vindication of the [bankruptcy] laws".(Id., at 197)*

## CONCLUSION

For all reasons cited above, Mr. Gallagher believes this case is worthy of a stay of proceedings while the District Court considers the appeal, and requests that this honorable Court grants said stay.

## REQUEST FOR RELIEF

WHEREFORE, Debtor Stephen O. Gallagher, II, respectfully requests that this Honorable Court,

1. ORDER the debtor's Emergency Motion to Stay Pending Appeal GRANTED.

2. ORDER all Chapter 7 proceedings in the bankruptcy court STAYED pending

appeal.

3. ORDER such other and further relief as the nature of the Debtor's cause.


Respectfully Submitted,


Stephen O. Gallagher, II
1319 Grandin Avenue
Rockville MD, 20851
(786)606-0271
January 16, 2023


**AFFIDAVIT**

I solemnly affirm under the penalties of perjury that the contents of the foregoing papers are true
to the best of my knowledge, information, and belief.


Stephen O. Gallagher, II

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th of January, 2024, the foregoing EMERGENCY

MOTION OF APPELLANT FOR STAY PENDING APPEAL  with attachments and exhibits were sent

by first class mail, postage prepaid to:

Steven H. Greenfeld
325 Ellington Boulevard, #610
Gaithersburg, MD 20878

Respectfully Submitted,

Stephen O. Gallagher, II
1319 Grandin Avenue
Rockville MD, 20851
(786)606-0271

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| IN Re: Stephen Orsmby Gallagher II<br>Debtor | BAP Number: 8:23-cv-031350DLB<br><br>Bankruptcy Case Number: 22-14180<br>Chapter: 7 |

Appellant
Stephen Ormsby Gallagher II

v.

Appellee
Merrill Cohen
Chapter 7 Trustee for the District of MD

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ORDER GRANTING EMERGENCY MOTION OF APPELLANT FOR STAY PENDING APPEAL</u>

Upon review of Debtor's Emergency Motion of Appellant for Stay Pending Appeal, it is

hereby, ORDERED, that the Emergency Motion of Appellant for Stay Pending Appeal is

GRANTED, and that all Chapter 7 proceedings in the bankruptcy court shall be STAYED

pending appeal.

cc:

Stephen Ormsby Gallagher, II

1319 Grandin Avenue

Rockville, MD 20851

Debtor



Merrill Cohen

Chapter 7 Trustee for the District of Maryland

P.O. Box 53

Harbeson, DE  19951



Steven H. Greenfeld

325 Ellington Boulevard, #610

Gaithersburg, MD 20878



**END OF ORDER**

USBC-MD B FILED DB
22 DEC '23 PM 6:46

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND

IN Re: Stephen Orsmby Gallagher II
Debtor

BAP Number: 8:23-cv-031350DLB

Bankruptcy Case Number: 22-14180
Chapter: 7

---

Appellant
Stephen Ormsby Gallagher II

v.

Appellee
Merrill Cohen
Chapter 7 Trustee for the District of MD

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### EMERGENCY MOTION OF APPELLANT FOR STAY PENDING APPEAL

#### INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 8(a)(2), Appellant Stephen Ormsby
Gallagher II ("Debtor") moves for a stay of the bankruptcy court's ruling issued denying
dimissial issued 11/01/2023 pending appeal. Because of the time-sensitive nature of this
request, the School Board respectfully asks the Court to rule within the next three
business days, on or before Thursday, December 28, 2023.

#### BACKGROUND

The issue under appeal in this case surrounds whether or not Congress granted the
bankruptcy court statutory authority to rebut the presumption of abuse raised by 11 U.S.
Code § 707(b) and deny a motion to dismiss for abuse by considering factors outside the
"means test" disposable income formula, namely the impact to secured and unsecured
creditors, the theoretical value of the debtor's assets, and the length of time the

**26**

bankruptcy case has been ongoing. This Court ruled on 11/01/2023 that the presumption

of abuse falls entirely within the discretion of the Court to determine, and denied Mr.

Gallagher's Motion to Dismiss Pursuant to 707(b), despite Mr. Gallagher having an order

of magnitude more disposable income than the means test allows for, and earnings nearly

double the median income of his region. Mr. Gallagher argues the contrary, citing the

Supreme Court, the Sixth and Eighth Federal Circuit Courts, the District Court of the

Western District of Arkansas, the lawmakers who authored the statute, and the plain

language of the statute itself. The Chapter 7 Trustee intends to proceed as rapidly as

possible with a liquidation that is unlawful by statute, therefore Mr. Gallagher moves to

stay the Court's order denying dismissal on 11/01/2023 and any further proceedings

pending the District Court's judgment upon appeal, which Mr. Gallagher will be moving

to have expedited.


## ARGUMENT


The settled standard which allows for the Court to issue a stay pending appeal is

conditioned upon the ability of the movant following :"(1) that he will likely prevail on

the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3)

that other parties will not be substantially harmed by the stay, and (4) that the public

interest will be served by granting the stay." Belk v. Charlotte-Mecklenberg Bd. of Educ.,

1999 U.S. App. LEXIS 34574, *4 (4th Cir. Dec. 30, 1999) (quoting Long v. Robinson,

432 F.2d 977, 979 (4th Cir. 1970)); FED. R. APP. P. 8(a)(2).

**I.     Mr. Gallagher will suffer imminent irreparable injury if the stay is
         denied.**

**27**

The property of the estate that is the subject of liquidation in this case is Mr. Gallagher's primary residence. This is his home, the center of his community, and his main place of business as a remote worker managing Federal IT and construction projects. The impact of losing one's home goes far beyond mere monetary considerations, as this quote from an aggregate review of multiple studies observing the mental and physical health effects of hosted on the NIH's Federal website details:

"*In all studies that examined an outcome related to mental health or health behavior (including substance use) (25/25 [100%]), foreclosure was associated with worsened outcomes. Among all 21 studies based on individual-level data, the personal experience of home foreclosure was associated with worsened outcomes including depression, anxiety, alcohol use, psychological distress, and suicide. Notably, only two of these studies accounted for potential selection into foreclosure by adjusting for baseline (pre-foreclosure) comorbidity. The estimated associations in the 4 studies based on aggregate-level data mirrored those of the individual-level studies, except that the outcomes studied were (for example) state-level suicide rates instead of personal suicide risk. Finally, similar themes of stress, anxiety, depression, and shame were almost universally described by study participants in the six qualitative studies.*

*Among the health-related studies, most (10/12 [83%]) showed that foreclosure was associated with worsened outcomes. Among the 10 studies based on individual-level data, in eight studies (8/10 [80%]) the personal experience of foreclosure was associated with worsened health outcomes.*" Tsai, Alexander C. "Home foreclosure, health, and mental health: a systematic review of individual, aggregate, and contextual associations." PloS one vol. 10,4 e0123182. 7 Apr. 2015, doi:10.1371/journal.pone.0123182

The mental and physical impacts of displacement from his domicile are both **imminent** and severe, and cannot be remedied with mere monetary compensation. Likewise the displacement from his main place of work could result in disruptive downstream effects that are difficult to quantify.

## II.     Other parties to the lawsuit will not be substantially harmed by the stay.

A stay of proceedings pending the outcome of appeal to the District Court would have little to no impact on the other parties, in this case creditors, in Mr. Gallagher's bankruptcy, whatsoever, outside of a minor delay in payment. On the hearing 11/01/2023, all parties and the Court agreed on that facts of the case, specifically that there was more than sufficient value in Mr. Gallagher's assets to pay any creditors. All the creditors are major institutions with ample reserves, economy is flourishing, and the stock market just hit new all time highs this past week. It is impossible to foresee any substantial harm coming to Mr. Gallagher's credit by pausing to allow the appeals process to take its course, whereas Mr. Gallagher could face substantial impacts as outlined above by a lack of one. Therefore, the balance of equities favors the granting of a stay.

## III.     Mr. Gallagher is likely to prevail on the merits of the appeal.

On the November 1st, 2023 Hearing for Dismissal per 707(b), honorable Judge Maria Ellena Chavez-Ruark ruled "But it is well settled in this jurisdiction that a Debtor cannot voluntarily dismiss a Chapter 7 case. The Court must hold a hearing and must make a determination that dismissal would not prejudice creditors." (Official Court

Transcript of Hearing on 11/01/2023 at 9). The court cited In re Hoang, 2010 Westlaw 2671712, a case about a felon arrested in a fraudulent real estate scheme that was directly related to the bankruptcy matter before the court who had been filing an endless stream of frivolous motions and appeals while serving out a decade plus sentence, which could not be more dissimilar from the circumstances of the present case, and In re Pagnotta, 22 BR 521, 1982. Both rulings were issued in response to motions from the debtors for voluntary dismissal and both were denied. Mr. Gallagher pointed out that the case from 1982 could not possibly be concerning the presumption of abuse at issue, as BAPCPA did not become law until 2005. To which the honorable Judge responded:

*"It was not. It was not, but it doesn't change the fact that Section 707(b) talks about a presumption. It doesn't say that, after you punch the numbers, that if the test has a certain result, that dismissal is the outcome.*

*707(b) talks about a presumption and the Court has to decide whether there has been an abuse. And frankly, Mr. Gallagher, it is just extremely odd that a debtor is arguing to the Court that his case should be dismissed for abuse of the bankruptcy process.*

*I have never seen it and I think it is an extremely odd procedural posture, but you are right. You filled out the paperwork. You filled out the means test and it said what it said.*

*It creates a presumption of abuse. But at the same time, the Court has to determine whether there is prejudice to creditors.*

*And so, the Court finds that because of the amount of time that has passed and the benefits that you have derived from being in bankruptcy for 15 months, and after considering the policy and the dicta in In re Pagnotta and In re Hoang, both decisions out of this Court on dismissal by a debtor, the Court has determined that dismissal is not in the best interest of creditors and the estate."*(Id. 11-12)

After the court issued its finding, the Judge proceeded to ask about the merits of Chapter 7 vs Chapter 13, which neither the Trustee nor Mr. Gallagher had prepared opinions on. Before closing, Mr. Gallagher reiterated the statute's language regarding the presumption of abuse and how only the debtor is granted the statutory ability to move to rebut the presumption:

"*[MR. GALLAGHER:] Again, I don't -- there is no need to belabor the question. My understand is the language in the statute says, the Court shall presume abuse, and the only way to overturn that is with special circumstances, which I don't qualify for.*

*THE COURT: Well, Mr. Gallagher, the Court has presumed abuse and the Court has concluded that that presumption has been rebutted. Let's be clear.*

*The Court is denying the motion to dismiss and the Court is not going to convert this case at this point. If either of the parties believes that conversion to Chapter 13 would be appropriate or Chapter 11 if that applies, then the Court will consider it at that time.*

*But at this point, the Court will simply deny the motion to dismiss and Mr. Cohen will continue to administer the estate.*"(Id. 11-12)

The US Supreme Court directs that all contested issues of statute begin with an examination of the language of the statute itself.

"*In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there... When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'*"Connecticut Nat. Bank v. Germain, 503 U.S. 249 (1992), 253-254

The language of the statute is plain and clear, with no ambiguous language in the relevant clauses. 11 U.S. Code § 707(b)(2)(A)(i) states:

"(i)In considering under paragraph (1) whether the granting of relief would be an abuse
of the provisions of this chapter, the court shall presume abuse exists if the debtor's current
monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and
multiplied by 60 is not less than the lesser of—

(I)25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000,
whichever is greater; or

(II)$10,000.1"

"Shall" is unambiguous, and leaves no room for interpretation. If a debtor fails the
means test the court shall presume abuse exists. There is no presumption the court must
then examine, the statute directs the court to presume abuse and be blind to other
considerations outside of "special circumstances." 11 U.S. Code § 707(b)(2)(B) states:

"(i)In any proceeding brought under this subsection, the presumption of abuse may only
be rebutted by demonstrating special circumstances, such as a serious medical condition or a call
or order to active duty in the Armed Forces, to the extent such special circumstances that justify
additional expenses or adjustments of current monthly income for which there is no reasonable
alternative.

(ii)In order to establish special circumstances, the debtor shall be required to itemize each
additional expense or adjustment of income and to provide—"

"Only" and "shall be required" are unambiguous, and leave no room for
interpretation. No one but the debtor, not the court, not the trustee, not other parties in
interest, has the ability to establish special circumstances and nothing can rebut the
presumption of abuse aside from the demonstration of special circumstances. As Mr.
Gallagher argued in his Response to the Trustee's Opposition, the means test is strictly a
measure of financial eligibility for which individuals are able to enjoy Chapter 7 relief
through liquidation. Assets, debts, and length of time the case have proceeded have no

bearing on that calculation. And such a conclusion of law coincides exactly with the stated intentions of the lawmakers who wrote the statute when they declared, during the conference debate over the Senate bill that eventually formed the bankruptcy law five years later: "The Committee believes that the relief sought by a debtor who files for bankruptcy is financial in nature and the debtor's right to obtain preferential relief under the special circumstances provision should be assessed based on financial considerations only." [Laura B. Bartell, Very Special Circumstances - The Almost Irrebuttable Presumption of Abuse under Section 707(b)(2), 91 Am. Bankr. L.J. 393, 434 (2017) at 403.]

Courts at all levels have concurred with this view of the statute. Perhaps the clearest example is District Judge Hendren in his 2008 ruling for Justice v. Advanced Control Solutions, Inc., No. 07-5231, 2008 WL 4368668 (W.D. Ark.Sept. 22, 2008), which reversed a lower court order granting a Chapter 7 bankruptcy charge in a case with circumstances similar to this one. That bankruptcy court had ruled that a 707(b) dismissal was inappropriate because there was evidence that unsecured creditors would receive a payout under Chapter 7 and that this payout should overcome the presumption of abuse. District Judge Hendren confirmed that, under the plain reading of the statutory language "the fact that creditors would receive a payout under Chapter 7 — even if larger than what they would receive under Chapter 13 — is not one of the bases for rebutting the presumption of abuse under § 707(b)(2)." (Id. 11) He further ruled 707(b) to be mandatory and remanded the case back to the bankruptcy court to dismiss or convert, as appropriate in its determination and, in the latter case, with the consent of the debtor:

"Indications of legislative intent, and obvious inferences to be drawn from the

*purpose of BAPCPA, persuade the Court that "may" in § 707(b) is used to indicate*

*discretion only as far as deciding which of two options should be exercised in a case*

*where the presumption of abuse arises and is not rebutted. As the Sixth Circuit explained*

*in Schultz , supra , the Means Test is the centerpiece of BAPCPA, which was enacted to*

*curb perceived abuse of Chapter 7 filings. If abuse is presumed under § 707(b)(2) and is*

*not rebutted, it would make no sense to read the statute as allowing bankruptcy courts*

*discretion to disregard the Means Test and allow the debtor to obtain a discharge in*

*Chapter 7, rather than dismiss or convert the case. The bankruptcy court would be*

*placing its judicial imprimatur on an abuse of the provisions of Chapter 7 in the face of*

*congressional attempts to avoid such abuse."* (Id., 10-11)

In 2011, this very ruling, which near exactly mirrors the issues at focus in this

appeal, was brought before the 8th Circuit on appeal and affirmed.

Justice Kagan in her 2011 majority Supreme Court opinion in Ransom v. FIA

Card Services, N. A., 562 U.S. 61 (2011) defined the means test as a "screening

mechanism"(Id., 2)  and "brighter line test"(Id., 16) that "supplants the pre-BAPCPA

practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to

varying and often inconsistent determinations". (Id. 3) Kagan makes the argument that

the means test exists as an explicit bar on eligibility of higher income individuals to be

able to access the relief afforded by a liquidation in Chapter 7 proceeding rather than a

repayment plan, and that "Congress chose to tolerate the occasional peculiarity" as a

result of its strict, mathematical formula for exclusion.

Judge R. Guy Cole, Jr., in his opinion for the ruling of a three judge panel before

the US Court of Appeals, Sixth Circuit, similarly outlined the means test as barrier of

eligibility and a strict requirement against high income individuals:

*'In 2005, the landscape for bankruptcy filings dramatically changed. Responding to a*

*growing belief that "bankruptcy relief may be too readily available and is sometimes used as a*

*first resort, rather than a last resort," H.R. REP. NO. 109-31(1), at 4 (2005), and the prevalence*

*of "opportunistic personal filings and abuse," id. at 5, Congress enacted the BAPCPA in order to*

*require above-median income debtors to make more funds available for the payment of unsecured*

*creditors. As a result, higher-income debtors with the ability to repay a substantial portion of*

*their debts without significant hardship are now required to do so by filing under Chapter 13*

*rather than Chapter 7.*

*The centerpiece of the Act is the imposition of a 'means test' for Chapter 7 filers, which*

*requires would-be debtors to demonstrate financial eligibility to avoid the presumption that their*

*bankruptcy filing is an abuse of the bankruptcy proceedings. By its terms, the BAPCPA authorizes*

*a bankruptcy court to dismiss a debtor's petition filed under Chapter 7 or, with the debtor's*

*consent, to convert such a petition to Chapter 13 'if it finds that the granting of relief would be an*

*abuse of the provisions of [Chapter 7].' 11 U.S.C. § 707(b)(1)."* Schultz v. U.S., 529 F.3d 343,

347 (6th Cir. 2008)

The Congressional Research Service, in a report hosted on Congress's official

federal website, Congress.gov, describes the eligibility threshold for Chapter 7 thusly:

*"Chapter 7 potentially 'allows an individual who is overwhelmed by debt to obtain a*

*'fresh start' in the form of a discharge of most types of debt by surrendering for distribution his or*

*her nonexempt property.' However, the Bankruptcy Code—starting in 2005 with the passage of*

*the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)—limits an individual*

*debtor's ability to obtain Chapter 7 relief by imposing a 'means test' to determine whether 'an*

*individual debtor . . . whose debts are primarily consumer debts' qualifies for Chapter 7 relief. If*

*the debtor's current monthly income, reduced by certain allowable expenses, exceeds statutory*

*thresholds established by the Bankruptcy Code, then the bankruptcy court must either dismiss the*

*Chapter 7 case or convert the case to a debt adjustment proceeding under Chapter 13."*

Bankruptcy Basics: A Primer - Congressional Research Service - 2022 - located online at

https://crsreports.congress.gov/product/pdf/R/R45137

      Likewise, the US Courts official federal website describes a Chapter 7 proceeding as

entirely premised upon the ability of a debtor to pass the means test, else such relief is not

available: *"To qualify for relief under chapter 7 of the Bankruptcy Code, the debtor may be an*

*individual, a partnership, or a corporation or other business entity. 11 U.S.C. §§ 101(41), 109(b).*

*Subject to the means test described above for individual debtors, relief is available under chapter*

*7 irrespective of the amount of the debtor's debts or whether the debtor is solvent or insolvent."*

Chapter 7 Basics - US Court Website - located online at

https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-7-bankru

ptcy-basics

      Dozens of other courts in jurisdiction country wide are have ruled similarly. For

the reasons laid out here, it is clear that Mr. Gallagher is likely to prevail based on the

merits of his appeal.

        IV.   **The public interest will be served by granting the stay.**

      As a general matter, "[t]he public interest is best served by preserving the status

quo ante litem until the merits are considered." O'Brien v. Appomattox Cnty., 2002 U.S.

Dist. LEXIS 22554, at *4-5 (W.D. Va. Nov. 15, 2002) (citing Maryland Undercoating Co.

v. Payne, 603 F.2d 477 (4th Cir. 1979)).

In this case, preserving the status quo ante means preserving the state prior to the

issue on appeal, namely the presumption of abuse being triggered and pending Hearing

for Dismissal per 707(b).

### Request for Relief

WHEREFORE, Debtor Stephen O. Gallagher, II, respectfully requests that this

Honorable Court,

    1. ORDER the debtor's Emergency Motion to Stay Pending Appeal GRANTED.

    2. ORDER such other and further relief as the nature of the Debtor's cause.

Respectfully Submitted,

Stephen O. Gallagher, II
1319 Grandin Avenue
Rockville MD, 20851
(786)606-0271

### AFFIDAVIT

I solemnly affirm under the penalties of perjury that the contents of the foregoing papers are true
to the best of my knowledge, information, and belief.

Stephen O. Gallagher, II

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22th of December, 2023, the foregoing **EMERGENCY**

**MOTION OF APPELLANT FOR STAY PENDING APPEAL** with attachments and exhibits were sent

by first class mail, postage prepaid to:


Merrill Cohen
Chapter 7 Trustee for the District of Maryland
P.O. Box 53
Harbeson, DE  19951

Steven H. Greenfeld
325 Ellington Boulevard, #610
Gaithersburg, MD 20878


Respectfully Submitted,

Stephen O. Gallagher, II
1319 Grandin Avenue
Rockville MD, 20851
(786)606-0271

**38**

13

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND

IN Re: Stephen Orsmby Gallagher II                    Case Number: 22-14180
            Debtor                                          Chapter: 7

**************************************************************************

## ORDER GRANTING EMERGENCY MOTION OF APPELLANT FOR STAY PENDING APPEAL

Upon review of Debtor's Emergency Motion of Appellant for Stay Pending Appeal, it is

hereby, ORDERED, that the Emergency Motion of Appellant for Stay Pending Appeal is

GRANTED.

cc:

Stephen Ormsby Gallagher, II

1319 Grandin Avenue

Rockville, MD 20851

Debtor


Merrill Cohen

Chapter 7 Trustee for the District of Maryland

P.O. Box 53

Harbeson, DE  19951


Steven H. Greenfeld

325 Ellington Boulevard, #610

Gaithersburg, MD 20878


**END OF ORDER**

Entered: December 28th, 2023
Signed: December 27th, 2023

**DENIED**
For the reasons stated on the record at the November 1, 2023
hearing on the Debtor's motion to dismiss, the Debtor is not likely to
succeed on the merits. Moreover, the public interest would not be
well served with a stay because a debtor should not be able to
enjoy the benefits of the automatic stay for 17 months and then
dismiss his case when the Court-appointed trustee is on the eve of
selling an asset for the benefit of creditors. Because the Debtor has
not satisfied the standard for a stay pending appeal, the motion is
denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

In re:    Case No.: **22−14180 − MCR**    Chapter: **7**

**Stephen Ormsby Gallagher II**
Debtor

## ORDER GRANTING
## EMERGENCY MOTION OF APPELLANT FOR STAY PENDING APPEAL

Upon consideration of the Emergency Motion Of Appellant For Stay Pending Appeal filed by Stephen Ormsby
Gallagher II, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Emergency Motion Of Appellant For Stay Pending Appeal is hereby granted.

cc:    Debtor
       Attorney for Debtor − PRO SE
       All Parties
       All Counsel
       Case Trustee − Merrill Cohen
       U.S. Trustee

### End of Order

44x01 (rev. 06/19/1998) − Michelle Raymond

41

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In Re:                      :
                         :
STEPHEN ORMSBY GALLAGHER, II    :      Case No. 22-14180-MCR
                         :      Chapter 7
         Debtor           :

**MOTION FOR AUTHORITY TO SELL
CERTAIN PROPERTY OF THE ESTATE**

COMES NOW Merrill Cohen, the Chapter 7 Trustee (the "Trustee") for the estate of Stephen Ormsby Gallagher, II (the "Debtor"), by and through his undersigned counsel, Law Offices of Steven H. Greenfeld, LLC, and moves for an Order authorizing the Trustee to sell the estate's interest in real property, and in support hereof, states the following:

1.      The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on August 1, 2022, and was converted to a case under Chapter 13 of the Bankruptcy Code on November 30, 2022. The case was reconverted to Chapter 7 on August 25, 2023.

2.      Merrill Cohen was appointed as Trustee, has qualified, and is now acting as Chapter 7 Trustee.

3.      Among the assets the Debtor listed in his bankruptcy petition is the real property located at 1319 Grandin Avenue, Rockville, MD 20904 (the "Property"). The Debtor scheduled the Property as having a fair market value of $580,000.00.

4.      The Property is encumbered to a first priority deed of trust in favor of Wells Fargo Bank, N.A. ("WF").

5.      According to information provided by WF, the payoff is $263,821.53 as of December 26, 2023. The Trustee estimates that the balance due to Lender at closing will be

approximately $266,000, which will be paid in full at closing.

6.      Upon information and belief, there are no other liens against the Property.

7.      The Trustee has obtained a Sales Contract (the "Contract") for the sale of the Property to Israel and Melvin Morales (colectively the "Buyer") for a price of $440,000.  A true and correct copy of the Contract and associated documents is attached hereto and incorporated herein by reference as Exhibit "A".

8.      The Buyer is a disinterested individual unrelated to the Debtor and the Trustee, and the Trustee submits that the offer from the Buyer is fair and reasonable and is an accurate reflection of the market value of the Property.  The Trustee believes that the proposed sale will generate sufficient net proceeds to pay the allowed unsecured claims in full and generate a substantial surplus for the Debtor.

9.      The Trustee herein seeks authority to sell the Property pursuant to §363(b) of the Bankruptcy Code, with net proceeds, after payment of all closing costs including realtor commissions, as well as payment in full of WF's secured claim, to be held by the Trustee pending further distribution for administrative claims and to unsecured creditors, with any surplus to be paid to the Debtor.

10.     The Trustee submits that the proposed sale of the Property for $440,000 is commercially reasonable and represents the fair market value of the Property and it is in the best interest of the estate that this Court authorize the Trustee to proceed to sell the Property according to the terms set forth herein.

WHEREFORE, the Trustee respectfully requests the Court grant this Motion and enter an Order authorizing the sale by the Trustee of the property known as 1319 Grandin Avenue, Rockvile, MD for a purchase price of $440,000, pursuant to the terms of the Contract attached

hereto; and granting such other and further relief as this Court deems just and equitable.

Respectfully submitted,

LAW OFFICES OF STEVEN H.
GREENFELD, LLC


By: */s/ Steven H. Greenfeld*
Steven H. Greenfeld
325 Ellington Boulevard, #610
Gaithersburg,  MD 20878
(301) 881-8300
steveng@cohenbaldinger.com
Counsel for Trustee

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of January 2024, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing Motion, along with a copy of the accompanying Notice, and proposed Order, will be served electronically via the Court's CM/ECF system on the following:

Danielle Boyle-Ebersole, Esq.
*Counsel for the Wells Fargo Bank, N.A.*

I HEREBY FURTHER CERTIFY that on the 3rd day of January 2024 , a copy of the forgoing Motion, along with a copy of the proposed Order was also mailed, first class mail, postage prepaid to:

Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770.

Stephen O. Gallagher, II
1319 Grandin Avenue
Rockville, MD 20851


*/s/ Steven H. Greenfeld*
Steven H. Greenfeld

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In Re:          :
            :
STEPHEN ORMSBY GALLAGHER, II  :   Case No. 22-14180-MCR
            :   Chapter 7
     Debtor      :

_____

**<u>ORDER AUTHORIZING SALE OF CERTAIN PROPERTY OF THE ESTATE</u>**

Upon consideration of the Trustee's Motion for Authority to Sell Certain Property of the Estate seeking authority to sell real property of the estate known as 1319 Grandin Avenue, Rockville, Maryland 20851 (the "Property"), and subject to the terms and conditions set forth herein, the Court finds and Orders as follows:

A.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and this matter in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.   The statutory predicates for the relief provided in this Order are 11 U.S.C. §§105(a) and 363(b), and FRBP 2002, 6004, and 9014.

C.   The Trustee has provided proper, timely, adequate and sufficient notice of the proposed sale and the hearing thereon in compliance with the applicable requirements of the

45

Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and any other applicable legal authority.

       D.      Approval of the sale is in the best interest of the bankruptcy estate, its creditors, and other parties in interest. The terms of the sale of the Property are fair and reasonable, and the transactions contemplated thereunder reflect the Trustee's prudent business judgment under the relevant circumstances.

       NOW, THEREFORE, it is by the United States Bankruptcy Court for the District of Maryland:

       ORDERED, that the Motion be and hereby is granted pursuant to 11 U.S.C. §§105(a) and 363(b).  The Trustee is authorized to sell the Property to Israel and Melvin Morales (collectively the "Buyer") on the terms set forth in the Motion. The Contract of Sale between the Trustee and the Buyer shall be and is hereby approved; and it is further

       ORDERED, that the Trustee's transfer of the Property pursuant to a Trustee's Deed or Quit Claim Deed constitutes a legal, valid and effective transfer of the Property and shall vest the Buyer with all right, title and interest of the Debtor and the bankruptcy estate in and to the Property; and it is further

       ORDERED, that, prior to delivering title to the Property at closing, the Trustee shall have received the net proceeds of sale free and clear of any interest of any party for distribution in this case; and it is further

       ORDERED, that, compensation of $26,400.00 is awarded to Cynthia G. Moses ("Moses") of Keller Williams Flagship of Maryland; and it is

       ORDERED that, subject to the final review and approval of the Trustee, the title company or closing agent for the sale of the Property is authorized to pay costs of closing as set forth in the

Contract of Sale or as otherwise agreed by the Trustee, and any escrow fees, title premiums, closing costs, compensation to Moses as awarded herein, and any other fees and costs as approved by the Trustee. Further, the title company or closing agent shall obtain an official payoff statement from Wells Fargo Home Mortgage and tender funds to Wells Fargo Home Mortgage sufficient to pay the outstanding indebtedness listed in the payoff statement in full. To the extent that funds are to be tendered short of a full payoff this must be done with the express written consent of Wells Fargo Home Mortgage.  The authorization to sell the subject property contained herein shall expire ninety (90) days from the date of entry of this Order. The balance of the net sale proceeds not subject to the above conditions shall be paid to the Estate; and it is further

ORDERED, that the Trustee is authorized to sell the Property to a substitute purchaser without further notice in the event that the sale to the Buyer does not close as long as the substitute contract has substantially the same or better terms for the estate; and it is further

ORDERED, that the Purchaser is hereby deemed to be entitled to the protection of 11 U.S.C. Section 363(m); and it is further

ORDERED that this Order is effective immediately and shall not be subject to a 14-day stay as provided in Bankruptcy Rule 6004(h).

Copies to:

Steven H. Greenfeld, Esq.
Merrill Cohen, Esq.
Stephen O. Gallagher, II
Office of the U.S. Trustee

**END OF ORDER**

47