IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN ORMSBY GALLAGHER, II, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-23-3135 |
| MERRILL COHEN, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

After Stephen Ormsby Gallagher, II lost his job, he filed for Chapter 7 bankruptcy. After Gallagher started a more lucrative job, he moved to dismiss his own case to avoid losing his home to his creditors. To justify dismissal, he accused himself of abusing the bankruptcy process. The U.S. Bankruptcy Court for the District of Maryland agreed that Gallagher was abusing the bankruptcy process but denied his motion to dismiss anyway. Gallagher appealed. ECF 1. He also appealed a 10-month-old order approving the application of Merrill Cohen, the Chapter 7 Trustee, for attorney's fees and expenses (the "Compensation Order"). *Id.* The appeal is fully briefed. ECF 8, 12, 19. No oral argument is necessary. *See* Fed. R. Bankr. P. 8019. Under these perplexing circumstances, Gallagher's appeal of the Compensation Order is dismissed for lack of jurisdiction and the denial of the motion to dismiss is vacated.

**I.     Background**

On August 1, 2022, Gallagher (representing himself) filed a Voluntary Petition for Relief pursuant to Chapter 7 of the U.S. Bankruptcy Code. ECF 1 in *In re Gallagher*, No. 22-14180-MCR. "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets."

*Schultz v. United States*, 529 F.3d 343, 346 (6th Cir. 2008). At the time Gallagher filed for Chapter 7 bankruptcy, he was unemployed. ECF 20, at 18 in *In re Gallagher*. His most significant asset was his house at 1319 Grandin Avenue in Rockville, Maryland. *See* ECF 34, at 1, 3 in *In re Gallagher*. The bankruptcy court appointed Cohen to serve as Chapter 7 Trustee of the bankruptcy estate. ECF 6 in *In re Gallagher*.

At the end of August, Gallagher submitted Form 122A-1, a statement of his current monthly income. ECF 36 in *In re Gallagher*. According to that statement, his average monthly income in the six full months preceding his filing for bankruptcy was $4,660.47 and his annual income was $55,925.68. *Id.* Because Gallagher's annual income was below $75,214—the median income for a one-person household in Maryland—the form indicated that his income did not give rise to a presumption that his Chapter 7 filing was an abuse of the bankruptcy process. *Id.*

As the case advanced, the bankruptcy court authorized Cohen to retain counsel. ECF 60 in *In re Gallagher*. He hired Stephen H. Greenfeld of Cohen Baldinger & Greenfeld, LLC. *Id.*

On November 8, 2022, Gallagher accepted an offer for a job with an annual salary of $110,000. ECF 70-1, at 1 in *In re Gallagher*. So he moved to convert his case from Chapter 7 to Chapter 13. ECF 70 in *In re Gallagher*. "[I]n a Chapter 13 proceeding, a debtor commits to repayment of a portion of his or her financial obligations over a specified period of time (generally three to five years) in exchange for retaining non-exempt assets and receiving a broader discharge of debt than is available under Chapter 7." *Schultz*, 529 F.3d at 346. The bankruptcy court granted the motion. ECF 72 in *In re Gallagher*.

On December 13, 2022, Greenfeld filed an application for approval of fees and expenses incurred while the case was under Chapter 7—that is, prior to the conversion to Chapter 13. ECF 76 in *In re Gallagher*. Gallagher opposed the application. ECF 85 in *In re Gallagher*. On January

9, 2023, the bankruptcy court issued the Compensation Order, which approved the application and ordered Gallagher to pay $1,615.00. ECF 87 in *In re Gallagher*. To date, Gallagher has not paid.

On June 2, 2023, Gallagher lost his job. ECF 3-12, ¶ 1. He remained unemployed until July 24, 2023, when he began a new job with higher pay: $137,500 per year. *Id.* ¶ 2.

Throughout this period of time, Gallagher proposed several Chapter 13 bankruptcy plans to repay his creditors. *See, e.g.*, ECF 79 & 103 in *In re Gallagher*. The bankruptcy court denied them. *See, e.g.*, ECF 101 & 119 in *In re Gallagher*. For that reason, on August 25, 2023, the bankruptcy court reconverted Gallagher's case from one under Chapter 13 to one under Chapter 7. ECF 121 in *In re Gallagher*.

On September 17, 2023, Gallagher filed a new Form 122A-1, Chapter 7 Statement of Monthly Income and a Form 122A-2, Means Test Calculation (collectively, "the Amended Means Test") based on the income from his latest job. *See* ECF 3-10. The form directed him to identify "the average monthly income that you received from all sources, derived during the 6 full months before you file [sic] this bankruptcy case." *Id.* at 1. Based on his pay in August 2023, Gallagher reported his monthly income as $11,489.36 and his annual income as $137,872.28. *Id.* at 2. The median family income for a one-person household in Maryland is $75,214.00. *Id.* So Gallagher checked that his income was higher than the median income for a household of his size. *Id.* After further calculations, Gallagher's form indicated that his income was so high that it gave rise to a presumption of abuse of the bankruptcy process. *See id.* at 4, 11. Because Gallagher's income created a presumption of abuse, Gallagher had the opportunity to report any special circumstances that would justify his income and expenses. *See id.* at 12. He reported that he had none. *Id.*

On September 28, Gallagher moved to dismiss his Chapter 7 case based on the presumption of abuse his Amended Means test indicated. ECF 3-12. On October 3, the Clerk of Court confirmed

that the information Gallagher had filed indicated that a presumption of abuse had arisen. ECF 3-11.

On November 1, 2023, the bankruptcy court held a hearing on Gallagher's motion to dismiss. ECF 3-17; ECF 4. At the outset, the parties agreed that there were no facts in dispute. ECF 3-17; ECF 4, at 4:17–24. To double check that the parties were in agreement about the facts, the bankruptcy court recited the material background, highlighting that "after completing the means test analysis, the means test indicates that there is a presumption of abuse based on [Gallagher's] disposable income." ECF 4, at 5:3–12. Then the bankruptcy court asked each party whether the court's recitation of the facts was correct and complete. *Id.* at 5:10–13, 18–19. The parties agreed that it was. *Id.* at 5:14, 5:20–6:18, 6:21–22. Both parties also accepted the bankruptcy court's framing of the sole question in dispute: "whether a case should be dismissed when the means test indicates that there is a presumption of abuse." *Id.* at 4:8–16. Ultimately, the bankruptcy court determined that even when the means test gives rise to a presumption of abuse, the bankruptcy court retains the discretion to deny a motion to dismiss based on that presumption of abuse. ECF 3-17. Applying that interpretation of the law to the case at hand, the court denied Gallagher's motion to dismiss because Gallagher had enjoyed the benefits of the bankruptcy process for over a year, the Trustee had been administering the case, and Gallagher's creditors would be prejudiced by dismissal. *Id.* On November 7, the bankruptcy court entered a corresponding order denying Gallagher's motion to dismiss his Chapter 7 bankruptcy case. ECF 3-18.

On November 17, Gallagher appealed the bankruptcy court's denial of his motion to dismiss. ECF 1. On January 13, 2024, Gallagher filed his opening brief. ECF 8. On February 13, the Trustee filed his opposition. ECF 12. On March 9, Gallagher replied. ECF 19.

4

Meanwhile, on January 3, 2024, the Trustee moved to sell Gallagher's house. ECF 159 in *In re Gallagher*. So on January 16, 2024, Gallagher filed an emergency motion to stay the bankruptcy proceedings pending this appeal. ECF 9. On March 6, this Court held a hearing, determined that Gallagher specifically sought to prevent the sale of his property while the appeal was pending, and found that Gallagher's appeal had divested the bankruptcy court of jurisdiction over the Trustee's motion to sell the property. So the Court denied the motion as moot. ECF 17.

The bankruptcy court proceedings continued as to matters not involved in the appeal. On February 13, 2024, the Trustee had moved to strike Gallagher's Amended Means Test on the ground that Gallagher had reported his August 2023 income when the form required that he report only his income in the six months before he filed for bankruptcy. ECF 167 in *In re Gallagher*. On March 27, the bankruptcy court held a hearing on the motion. ECF 172 in *In re Gallagher*. On March 28, 2024, the bankruptcy court granted the motion to strike. ECF 173 in *In re Gallagher*.

**II.     Standard of Review**

28 U.S.C. § 158(a) authorizes appeals from the bankruptcy court to the district court. *See R&J Contractor Servs., LLC v. Vancamp*, 652 B.R. 237, 239, 241 (D. Md. 2023). In an appeal from the bankruptcy court, the district court acts as an appellate court, *In re Modanlo*, 342 B.R. 238, 241 (D. Md. 2006), reviewing the bankruptcy court's findings of fact for clear error and its conclusions of law de novo, *Binswanger Cos. v. Merry-Go-Round Enters., Inc.*, 258 B.R. 608, 611 (D. Md. 2001) (citing *First Nat'l Bank of Md. v. Stanley* (*In re Stanley*), 66 F.3d 664, 667 (4th Cir. 1995)). A factual finding is clearly erroneous if "the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Vancamp*, 652 B.R. at 241 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further

proceedings." *Vancamp*, 652 B.R. at 241 (citing Fed. R. Bankr. P. 8013; *In re White*, 128 F. App'x 994, 999 (4th Cir. 2005)).

### III. Discussion

Gallagher appeals the Compensation Order and the denial of his motion to dismiss. His appeal of the Compensation Order is untimely, so this Court lacks jurisdiction to hear it. The order denying the motion to dismiss is vacated.

### A. Compensation Order

Gallagher appeals the bankruptcy court's order that he pay the fees and expenses of the Chapter 7 Trustee's attorney. Under Federal Rule of Bankruptcy Procedure 8002(a), a party to a bankruptcy proceeding must file a notice of appeal within 14 days of the entry of the order from which they appeal. *Jones v. Marguiles*, No. PWG-17-3088, 2018 WL 3219759, at *1 (D. Md. July 2, 2018). Rule 8002(a) is strictly enforced, *see id.* (citing *AgSouth Farm Credit, ACA v. Bishop* (*In re Craig Lewis Bishop*), 333 B.R. 746, 748 (D.S.C. 2005)), even against debtors representing themselves, *see id.* at *2 (citing *In re Guaranteed Better Sales Mktg., Inc.*, 870 F.2d 654 (Table), at *1 (4th Cir. 1989)). If the appellant did not timely file a notice of appeal, the district court lacks jurisdiction to hear the appeal. *Id.* at *1 (citing *Brockett v. Robbins*, No. WMN-16-1020, 2016 WL 2997346, at *2–3 (D. Md. May 25, 2016)).

Gallagher's appeal is untimely. The bankruptcy court issued the Compensation Order on January 9, 2023. It became final on January 23, 2023. Gallagher filed this appeal on November 17, 2023—nearly 300 days later. So this Court has no jurisdiction over Gallagher's belated appeal. *See id.* at *3.

Acknowledging that this conclusion "is accurate and well taken," Gallagher asserts that he is not appealing the Compensation Order at all, but rather the order issued in the wake of the

November 2023 hearing. ECF 19, at 5–7. On Gallagher's account, the bankruptcy court conditioned the dismissal of his case on his fulfillment of his obligations under the Compensation Order. Even if this Court were to find that Gallagher is appealing from the November 2023 order rather than the Compensation Order—which it does not—this appeal would be meritless. The bankruptcy court never conditioned the dismissal of Gallagher's case on his payment of the Trustee's counsel. In fact, the Compensation Order never came up at the hearing or in the order memorializing the hearing. The only remotely relevant event was the Trustee's request in his brief before the hearing that if the bankruptcy court were to grant Gallagher's motion to dismiss, the bankruptcy court condition dismissal on Gallagher's payment of the Compensation Order. *See* ECF 3-15, at 4. But the bankruptcy court did not act on that request. *See* ECF 3-17. There is no order of the bankruptcy court on this issue that Gallagher possibly could be appealing.

Accordingly, Gallagher's appeal from the Compensation Order is dismissed for lack of jurisdiction.

### B. Denial of the Motion to Dismiss

Gallagher also appeals the bankruptcy court's denial of his motion to dismiss. Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a bankruptcy court

> on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1); *see also McDow v. Dudley*, 662 F.3d 284, 288 (4th Cir. 2011). "An essential element to the BAPCPA is the 'means test,' a formula that screens a debtor's income and expenses to determine whether the debtor is able to repay his debt." *Calhoun v. U.S. Trustee*, 650 F.3d 338,

7

340 (4th Cir. 2011). "The means test calculates the debtor's current monthly income, as defined under 11 U.S.C. § 101(10A), based on the debtor's average income for the six months preceding the month of the bankruptcy filing." *Lynch v. Haenke*, 395 B.R. 346, 347–48 (E.D.N.C. 2008). If a debtor's average monthly income for that period exceeds the median income of a household of the same size in the debtor's state, the bankruptcy court must deduct the debtor's essential expenses and determine whether the debtor's monthly disposable income exceeds a statutory threshold. *See Calhoun*, 650 F.3d at 340–31. If the debtor's monthly disposable income is higher than the statute specifies, the debtor's bankruptcy case is presumed to be an abuse of the process. *Id.* at 341. That presumption is rebuttable if, but only if, the debtor can show that "special circumstances" justify excess expenses, *see McDow*, 662 F.3d at 288, "such as a serious medical condition or a call or order to active duty in the Armed Forces," *Calhoun*, 650 F.3d at 341 (quoting 11 U.S.C. § 707(b)(2)(B)(i)).

Gallagher's Amended Means Test, filed in September 2023, indicated that his income exceeded the statutory threshold, rendering his case a presumptive abuse of the bankruptcy process. And Gallagher did not report any special circumstances that could rebut the presumption. On those grounds, Gallagher moved to dismiss his own case as abusive.

Gallagher contends that under these circumstances, the bankruptcy court had to grant his motion to dismiss. On his reading of 11 U.S.C. § 707(b), when a bankruptcy court finds that there is a presumption of abuse by the debtor, the debtor fails to rebut that presumption, and the debtor seeks dismissal rather than conversion to Chapter 11 or Chapter 13, the bankruptcy court may not permit the case to proceed under Chapter 7.

On the Trustee's account, Gallagher's finances did not warrant any presumption of abuse in the first place. Even if they did, the bankruptcy court had the discretion to deny Gallagher's

8

motion to dismiss the case anyway and continue Chapter 7 proceedings. For either reason, as the Trustee sees it, the bankruptcy court did not err in denying the motion to dismiss.

### 1. Presumption of Abuse

The first question is whether, as the bankruptcy court found, Gallagher's income gave rise to a presumption of abuse. Whether the bankruptcy court was right or wrong about that, both parties expressly accepted that finding below. So the Trustee may not challenge it now.

A party may not raise a new argument for the first time on appeal, at least absent extraordinary circumstances. *Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002). Courts honor this rule "so that district courts will not serve merely as way stations en route to the court of appeals." *Rusnack v. Cardinal Bank, N.A.*, 695 Fed. App'x 704, 711 (4th Cir. 2017) (citations omitted). "The same rationale applies with equal force to arguments not raised before the bankruptcy court." *Id.* Accordingly, the Fourth Circuit and district courts within its jurisdiction have all but uniformly refused to consider arguments in bankruptcy appeals that were not raised before the bankruptcy court. *See United Rentals, Inc. v. Angell*, 592 F.3d 525, 531 n.2 (4th Cir. 2010); *Rusnack*, 695 Fed. App'x at 711; *In re Modanlo*, 342 B.R. 238, 244 (D. Md. 2006) (citing *Wheatley v. Wicomico Cnty., Md.*, 390 F.3d 328, 335 (4th Cir. 2004)); *In re Richmond*, 615 B.R. 758, 765 (M.D.N.C. 2020); *Waterproofing Specialties, Inc. v. Weaver Cooke Constr., LLC*, 564 B.R. 276, 284–85 & 284 n.6 (E.D.N.C. 2017); *In re Paschall*, 408 B.R. 79, 87 (E.D. Va. 2009) (citing *In re Endicott,* 157 B.R. 255, 258 (W.D. Va.1993)). The sole exception is when the novel argument concerns subject matter jurisdiction. *See State of Md. v. Antonelli Creditors' Liquidating Tr.*, 123 F.3d 777, 786 (4th Cir. 1997) (holding state may raise sovereign immunity argument for the first time on appeal from the bankruptcy court only "because that immunity has jurisdictional aspects").

Below, neither party challenged the bankruptcy court's finding that Gallagher's case was abusive. At the hearing, the bankruptcy court expressly asked the parties whether they accepted that finding. They did. The bankruptcy court and the parties could hardly have been clearer.

Nevertheless, in this appeal the Trustee argues for the first time that Gallagher's finances did not warrant a presumption of abuse. The Trustee advances two arguments that Gallagher overrepresented his income by reporting his earnings for the wrong period of time. First, Cohen contends that the time period material under the statute and requested by the form is the six full months prior to the debtor's Chapter 7 filing: February 2022 to July 2022. Gallagher, however, completed the form in September 2023 on the basis of his August 2023 income from a job he began well after filing for bankruptcy. In the correct timeframe, Gallagher's income was too low to create a presumption of abuse. Second, Cohen argues that even if the relevant timeframe is the six full months before Gallagher's case was reconverted from Chapter 13 back to Chapter 7—February 2023 to July 2023—Gallagher's income still did not warrant a presumption of abuse. The income Gallagher reported on the form in September 2023 reflected his first two paychecks in August 2023—pay the bankruptcy court should never have considered. So again, the bankruptcy court should not have found that there was a presumption of abuse.

Cohen has a point. Gallagher should have reported his income for the six-month period before the month he filed for bankruptcy: February 2022 to July 2022. *See Lynch*, 395 B.R. at 347–48. Gallaher calculated his income based on his higher pay in August 2023—triggering a presumption of abuse that would not have arisen if Gallagher had reported his income for the correct timeframe. No wonder that after Gallagher appealed, the Trustee moved to strike Gallagher's Amended Means Test and the bankruptcy court granted that motion. But Cohen's point comes too late. Because the Trustee did not challenge the bankruptcy court's finding that

Gallagher's income gave rise to a presumption of abuse when the bankruptcy court made that finding, the Trustee may not challenge it on appeal. *See United Rentals*, 592 F.3d at 531 n.2; *Rusnack*, 695 Fed. App'x at 711; *In re Modanlo*, 342 B.R. at 244. The Court declines to consider the Trustee's arguments that Gallagher's income did not warrant a presumption of abuse.

### 2. Rebuttal

A stray remark in the hearing transcript requires a word about rebuttal. As noted above, the BAPCPA provides that

> the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

11 U.S.C. § 707(b)(2)(B)(i). In order to rebut the presumption, "the debtor shall be required to itemize each additional expense or adjustment of income" and to document and explain why those expenses are "necessary and reasonable." *Id.* § 707(b)(2)(B)(ii).

Gallagher did not even attempt to rebut the presumption of abuse. *See* ECF 3-10, at 12; ECF 4, at 14:8–10. He conceded he had no special circumstances. ECF 3-10, at 12. Understandably, then, the bankruptcy court's written explanation of its decision to deny the motion to dismiss did not mention rebuttal at all. Instead, the bankruptcy court concluded that the presumption of abuse gave the court "discretion whether to dismiss the case" and then decided to deny the motion "because the Debtor has enjoyed the benefits of the automatic stay for 15 months, the Trustee has been administering the case, and creditors would be prejudiced by dismissal." ECF 3-17. At the hearing, the bankruptcy court's initial explanation of its denial of the motion to dismiss did not address rebuttal either. There, too, the bankruptcy court explained that in light of the presumption of abuse, it had the discretion to "determine whether dismissal, remaining in Chapter

7, or conversion back to Chapter 13 would be in the best interest of creditors," then determined that dismissal would not be in the creditors' best interests. *See* ECF 4, at 9–12. In short, the bankruptcy court denied the motion to dismiss on the theory that, although a presumption of abuse arose, the court retained the discretion to deny the motion and keep the case in Chapter 7 in order to protect the interests of the creditors.

However, toward the close of the hearing, the bankruptcy court asked the parties for argument on "whether it is better that this case remain in a Chapter 7 for Mr. Cohen to administer the estate, or whether the case should be converted to Chapter 13." *Id.* at 12:5–7. After some back and forth on that question, Gallagher tried to relitigate the denial of his motion to dismiss: "My understand [sic] is the language in the statute says, the Court shall presume abuse, and the only way to overturn that is with special circumstances, which I don't qualify for." *Id.* at 14:8–10. In response, the bankruptcy court said: "the Court has presumed abuse and the Court has concluded that that presumption has been rebutted." ECF 4, at 14:11–13. That raises the question of whether the bankruptcy court found that the presumption had been rebutted, and if so, what to make of that finding.

For several reasons, the Court does not find that the bankruptcy court held that the presumption of abuse had been rebutted. First, there is little reason to think this lone remark should control over the conflicting prior explanation from the bench or the conflicting subsequent written explanation. Second, neither party below argued that the presumption had been rebutted and neither party argues now that the bankruptcy court found that the presumption was rebutted. Third, since Gallagher made no attempt whatsoever to rebut the presumption of abuse—indeed, he embraced it—any finding that he had rebutted the presumption would have been clear error. For these reasons, the Court hews to its original interpretation of the ruling: The bankruptcy court

12

denied the motion to dismiss because the presumption of abuse did not require it to grant the motion and granting the motion would not serve the best interests of the creditors.

### 3. Requirement of Dismissal

That leaves one question: whether under 11 U.S.C. § 707(b), an unrebutted presumption of abuse compels the bankruptcy court to grant a motion to dismiss a Chapter 7 case as abusive or merely authorizes the bankruptcy court to grant it. As the Court noted above, that provision specifies that a bankruptcy court

> may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).

The Fourth Circuit has never squarely decided whether an unrebutted presumption of abuse requires granting a motion to dismiss under § 707(b) or merely permits dismissal. However, in dicta, the Fourth Circuit has indicated that dismissal is mandatory. In *McDow v. Dudley*, 662 F.3d 284 (4th Cir. 2011), the court held that a bankruptcy court's denial of a motion to dismiss a Chapter 7 case as abusive is a final order appealable immediately. *Id.* at 285, 289–90. To justify that holding, the court examined "the precise nature and effect of the order at issue—an order denying a § 707(b) motion." *Id.* at 288. "Under the means test," the Fourth Circuit explained, "if the debtor's average monthly disposable income, as calculated under the statute, exceeds the statutory threshold, then the case is presumptively abusive and *must be dismissed* unless the debtor can show 'special circumstances.'" *Id.* (citing 11 U.S.C. § 707(b)(2)(A)–(B)) (emphasis added). On the Fourth Circuit's account, dismissal is mandatory, not discretionary. That makes sense. Once a bankruptcy court has determined that the debtor abused the bankruptcy process, it would be odd, at best, to permit that abuse to continue—and to be rewarded.

13

Confirming that conclusion, district courts within the Fourth Circuit have consistently concluded that dismissal under § 707(b) for abuse is mandatory. *See, e.g.*, *In re Alther*, 537 B.R. 262, 271 (W.D. Va. 2015); *In re Siler*, 426 B.R. 167, 173 (W.D.N.C. 2010). In fact, the Trustee cites no case within this circuit holding that dismissal for abuse is discretionary. Instead, the Trustee rests entirely on cases concerning motions to dismiss under a different provision, § 707(a), that does not concern abuse at all.

Neither of the two cases the bankruptcy court cited in support of its holding concerns §707(b) either. In *In re Pagnotta*, 22 B.R. 521 (Bankr. D. Md. 1982), the bankruptcy court for this district held that "a mere change of heart on the part of the debtors who now feel that it would not be in their best interests to be discharged in bankruptcy is not a sufficient reason to dismiss" their bankruptcy case. *Id.* at 522. Perhaps that is a plausible interpretation of what happened here: After securing a new, relatively lucrative job, Gallagher had a change of heart and moved to dismiss his bankruptcy case to avoid having to lose his home to his creditors. As the bankruptcy court observed at the hearing on Gallagher's motion to dismiss, "it is just extremely odd that a debtor is arguing to the Court that his case should be dismissed for abuse of the bankruptcy process." ECF 4, at 11:13–15. But as Gallagher argued below, *Pagnotta* preceded the statute that governs this case—the BAPCPA—by over 20 years. *See id.* at 11:3–6. *Pagnotta* did not and could not address whether the BAPCPA requires or merely permits the bankruptcy court to grant a motion to dismiss predicated on an unrebutted presumption of abuse—an issue with no analogue in the prior version of the bankruptcy statute. *See Calhoun*, 650 F.3d at 340. Even setting that aside, this case is not about a "*mere* change of heart." *See Pagnotta*, 22 B.R. at 522 (emphasis added). This case is (also) about a judicial finding that Gallagher abused the bankruptcy process. *Pagnotta* did not involve bankruptcy abuse at all. *See id.* at 521–22.

The bankruptcy court also cited a more recent case, *In re Hoang*, Nos. 05-21078-TJC, 05-25738-TJC, 2010 WL 2671712 (Bankr. D. Md. July 2, 2010). The *Hoang* Court observed that "[t]he decision on dismissal falls squarely within the sound discretion of the Court" and that "the Court is required to consider the impact that a dismissal will have on the various entities involved in the case," including "the best interests of the creditors and the debtor." *Id.* at *4 (quoting *In re McCullough*, 229 B.R. 374, 376 (Bankr. E.D. Va. 1999)). However, the *Hoang* Court was talking about a motion to dismiss under 11 U.S.C. § 707(a), *see id.* at *4–5, whereas this case concerns a motion to dismiss under § 707(b), the abuse provision. *Hoang* did not address what a bankruptcy court may do with a presumptively abusive bankruptcy case.

To be sure, there are good reasons to read the statute as the bankruptcy court did. After all, the statute says that if the bankruptcy court "finds that the granting of relief would be an abuse of the provisions of this chapter," "the court . . . *may* dismiss a case." 11 U.S.C. § 707(b)(1). *But see United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion. This common-sense principle of statutory construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute."). But this Court should not ignore the contrary interpretation of the Fourth Circuit. And this Court should not ignore the contrary readings of the other district courts in the Fourth Circuit's jurisdiction. So this Court holds that when an unrebutted presumption of abuse arises in a Chapter 7 bankruptcy case and the debtor does not consent to conversion, the bankruptcy court must grant a motion to dismiss under § 707(b).

\*   \*   \*

The bankruptcy court determined that the Amended Means Test gave rise to a presumption Gallagher had abused the bankruptcy process. The parties agreed. Gallagher did not rebut that presumption. In consequence, the bankruptcy court had a duty to grant the motion to dismiss. Accordingly, the bankruptcy court's denial of Gallagher's motion to dismiss must be vacated.[1]

## IV.  Conclusion

For the reasons above, Gallagher's appeal of the Compensation Order is dismissed, the bankruptcy court's denial of Gallagher's motion to dismiss is vacated, and Cohen's motion to dismiss the appeal is denied. This case is remanded to the bankruptcy court for further proceedings consistent with this opinion. *See CWCapital Asset Mgmt., LLC v. Burcam Cap. II, LLC*, Nos. 5:13-CV-278-F, 5:13-CV-279-F, 2014 WL 2864678, at *9 (E.D.N.C. June 24, 2014). A separate order follows.

Date: April 15, 2024

Deborah L. Boardman
United States District Judge

---

[1] On April 12, 2024, Cohen moved to dismiss Gallagher's appeal. ECF 21. On Cohen's account, the bankruptcy court's grant of his motion to strike the Amended Means Test while this appeal was pending eliminates the basis for Gallagher's motion to dismiss, so "the Bankruptcy Court's denial of the Appellant's motion to dismiss was justified." *Id.* ¶ 10. Generally, "[t]he district court may only consider that evidence presented to the bankruptcy court and made part of the record." *In re Comp. Dynamics, Inc.*, 253 B.R. 693, 697 (E.D. Va. 2000). However, the district court "is entitled to take judicial notice of the records of the bankruptcy court." *In re Modanlo*, 342 B.R. 238, 241 n.7 (D. Md. 2006). So this Court may take notice of the bankruptcy court's decision to strike the Amended Means Test. However, dismissal of a bankruptcy appeal is typically appropriate only where the district court lacks jurisdiction over the appeal or the appellant failed to follow appellate procedure. *See, e.g.*, *Public-Sector Solutions, Inc. v. Hunt & Assocs., P.C.*, 626 F. Supp. 3d 811, 813–14 (D. Md. 2022); *Reid v. Cohen*, No. PWG-19-752, 2020 WL 886181, at *2–3 (D. Md. Feb. 24, 2020). Neither circumstance obtains here. The bankruptcy court should determine the consequences of the motion to strike in the first instance. *See Li v. Chu*, Nos. PX-21-2717, PX-21-2487, 2022 WL 2116894, at *3 (D. Md. June 13, 2022). Accordingly, Cohen's motion to dismiss the appeal is denied.